At Mr. Rodriguez's murder trial, the prosecutor argued to the jury that there was not a single bit of evidence that the decedent and his companions were committing a violent robbery when he was shot. That evidence could have and should have been presented at trial. Rodriguez's trial counsel was prejudicially ineffective because she failed to present the preliminary hearing testimony of Roy Ramsey and because she failed to even locate and interview witnesses Kenneth Jackson and Von Rieh-Alberti. Their testimony would have corroborated Rodriguez's testimony that he fired Ramsey's gun only to protect others. The district court's initial decision that trial counsel was prejudicially ineffective for failing to present that testimony was correct. No reasonable attorney under the circumstances would have agreed with trial counsel's rationalizations that Ramsey's statement was too thin to convince a jury. Kagan. Let me ask you, counsel, about your ineffective assistance of counsel claim with regard to the failure to investigate and call Kenneth Jackson and Von Rieh-Alberti as potential witnesses in this case. That claim was filed after the one-year statute limitation. So what is your theory in terms of relating back? Does it relate back to the original petition's claim of failure to investigate matters pertaining to the trial, just that general statement, or is it specifically with regard to Exhibit J, which named certain witnesses or referenced certain witnesses? Your Honor, I believe that it was there was a common core of operative facts sufficient to satisfy Rule 15c such that the subsequent petition filed in 2008 related back to the 2003 petition. And essentially, yes. I mean, a failure to investigate is a sufficient allegation of fact to constitute a common core. Just a minute. Are you just saying a failure to investigate in general, or are you saying a failure to investigate matters pertaining to the trial in general? Not in general. Or are you saying the failure to investigate and call exculpatory witnesses? Your Honor, it's failure to investigate and call exculpatory witnesses. And there really was only one issue to investigate in this trial, and that was what happened between the Walker Group and the Melrose Group, as they were deemed by the district court, once the Walker Group arrived. So the failure to investigate could only have been as to that sole issue, the aggressiveness. So it's that broad, that level of generality? It's the failure to investigate any information that could have been exculpatory during the entire incident? Your Honor to preserve the entirety of that claim? Certainly. This was such a small universe of facts that, yes, there was an information outside the scope of what happened when the Walker Group got there that counsel needed to investigate. It was a very small, essentially a discrete issue, to talk to the people who were there, find out what they saw and what happened. And that's what was alleged in the first petition, that counsel had failed to do that. And there were the specific witnesses that were discovered and who were interviewed for the second petition. But what concerns me about your argument, counsel, is that, you know, you've got a situation where there are potentially a lot of different witnesses who may be percipient. And counsel would have to make certain strategic decisions regarding which witnesses to call and which ones not to call. For example, witnesses who may contradict the defendant's own statement regarding what led up to the shooting in question. So counsel's strategic choices with regard to one witness may be very different than choices with regard to another witness. And that's why I ask that question, what level of generality you're talking about in your relation-backed theory, because there's a broad statement in the original petition, the failure to investigate matters pertaining to the trial. That's very broad. But then there's also this exhibit attached that referenced particular witnesses. And that exhibit did not reference the two witnesses that we're talking about here, and that is Kenneth Jackson and Von Reh-Alberti. Understood, Your Honor. However, getting to the court's first point about whether or not counsel or there should be deference to selection of witnesses, the case law under Strickland is very clear that if counsel fails to do a reasonable investigation, then any selection of witnesses that counsel does thereafter can't be deemed to be reasonably tactical. Without having any contact with these witnesses, trial counsel could not have possibly made a reasonable tactical choice not to call them. And secondly, these two witnesses were clearly critical at the outset because they were in the car right at the scene when the Walker group arrived. They both saw the Walker group aggressively approaching them and demanding drugs and trying to get things out of their pockets. One of them, Alberti, saw Braschel being accosted and robbed, and the other, Jackson, saw both robberies. So there really was absolutely no reasonable attorney under the circumstances could have possibly said, oh, we don't need to talk to them. They were clearly, from the beginning, people that needed to be interviewed because they were right in the middle of this action. And I think the district judge's initial opinion granting habeas relief spells that out pretty clearly and reasonably, that it just couldn't have possibly been a reasonable tactical choice to ignore those two. I'm interested that you said that the judge did. Do I owe any deference to the district court regarding this decision? This Court reviews district courts' decisions as to the denial of a habeas petition de novo. So I can't say that. We're talking about the relation back theory. The district court said that this did relate back, and I'm suggesting do I owe the district court any deference in that decision? This Court reviews procedural decisions de novo, that procedural decision. Even that decision. I do believe that. If it was a motion to amend, I would be giving deference. And this really seems to be a motion to amend. Well, Your Honor, it could be that there are underlying factual determinations, such as the relation back issue, where the issue would be reviewed for clear error. However, I believe the Court's now focusing on the relation back issue, and I, as we that this Court should not reverse that finding by the district court without a notice of appeal or an appeal, a cross-appeal being filed by the government as to the 15C relation back issue. I understand. Well, I think we have that. Well, supposing that I say this relates back, then at that point, it seems to me that I have to suggest, I have to go through, is the claim procedurally defaulted? It seems to me that the State supreme court said that this was denied because it was untimely, and therefore, a procedural default. You'd agree with that aspect? Your Honor, it does appear that those were the citations to authority that the Court relied on, the California supreme court. However, as we did argue in our brief, the procedural default should be overcome by the evidence here under the most recent decision, Martinez v. Ryan. Well, before we get to Martinez, I guess what we're really looking at is whether your client can show cause and prejudice. And the first issue, I mean, I can get to Martinez if I don't get through the first issue, but how can I argue, or how can I find counsel to be ineffective on direct appeal when counsel failed to raise issues outside the record? Your Honor, I think that's addressed somewhat in Martinez, as well as the more recent decision. It is addressed in Martinez. I mean, Martinez has to do not with counsel's counsel on direct appeal at all. Martinez has to do with what counsel did on a habeas petition. We're on direct appeal. And I thought you're even reading what you wrote to me, that you said that counsel cannot be ineffective on direct appeal and not raise issues that are outside the record. Isn't that what you argued? Your Honor, the point I was trying to make was that procedurally, counsel can't raise it in the appeal itself, but must raise that issue by way of a habeas corpus petition. Well, but that counsel wasn't the habeas corpus counsel. Your Honor, interestingly, in California, when appointed counsel are appointed for the appeal, they can and do file associated habeas corpus petitions if the facts that they do. Can and do, but they don't necessarily need to. It varies from district to district as to the procedural requirements for counsel to receive payment for doing that work. And that's maybe beyond the scope of this discussion. Well, that was why it seemed interesting as to your argument, because what you're really arguing is counsel was not ineffective on direct appeal, but automatically I'm to jump to the conclusion that counsel was somehow ineffective in a habeas when it wasn't clear that he'd even have to be involved in the habeas. Well, the reading of Martinez, or at least my reading of Martinez issues — I'm not talking about Martinez. I'm talking about California law. I couldn't find any place which said this counsel must file any habeas petition. Your Honor, I don't know that there is a rule requiring a habeas petition. It varies from district to district as to how those appointments are handled. But I'm supposed to jump to the fact that he made a Martinez error, and we don't even know if he should have filed? Well, the — I think the legal issue, as far as the procedural default is concerned, is that that was Mr. Rodriguez's only opportunity. In other words, it functioned as his only appeal, because by the time the issue actually got into the hands of appointed counsel who recognized it, there was a procedural default. And I think the point there is that if he has to raise it at that time, which it seems to be what the California court was saying, you should have raised this before, then he — his counsel, his appellate counsel, was ineffective for failing to raise it at the time that she could, which was in association with his direct appeal. Okay. I've taken you over. Did you want to — I'll give you another minute after the State's response. Thank you, Your Honor. May it please the Court. Peggy Ruffray from the California Attorney General's Office for Respondent. Your Honor, I think as far as the Ramsey claim, the claim of ineffective assistance for failing to introduce the preliminary hearing testimony of Witness Ramsey, that's the claim where the district court held an evidentiary hearing, had the attorney testify, and specifically found that the trial attorney was credible and had sound and legitimate reasons for not introducing that preliminary hearing testimony. That seems conclusive at this point on appeal. So unless the Court has some specific questions about that claim, I'll proceed on to the totally separate claim of the failure to investigate these other two witnesses, Jackson and Alberti. And on that claim, I think there is a simple resolution, which is that that claim is untimely and should have been dismissed. Now, first of all, there is no cross-appeal requirement for — to appeal an underlying issue that does not change the ultimate outcome. There are many cases that cite that. This wasn't raised until the reply. I can — I have one that I can give you if you're interested, Engelson v. Burlington, 972 F. Second, 1038, a Ninth Circuit case from 1992. But this happens commonly where we make a motion to dismiss as untimely. The district court, for whatever reason, rejects that, but then proceeds to deny the petition on the merits. Then we are entitled to raise that timeliness claim on appeal without having a separate cross-appeal. We do that all the time. We've never had the Court question that or suggest that that's improper in any way. So I ask the Court to find that no cross-appeal was required in this case. We also contend that this new claim about these two witnesses does not relate back to the original petition. It's very clear that the claim raised in that petition was extremely broad. As far as the actual statement in the petition, it said — Right? I'm sorry, one — This was one event. The underlying crime, right? Correct. And so you're saying that if counsel receives a letter saying, investigate Witness A, B, and C to an event where D, E, F, and G were present, it doesn't relate back? Correct. Absolutely. Pretty parsimonious, isn't it? I don't think so. I think that there is absolutely a different reason why — Was there a different type of malfeasance there? Well, it's all under the general rubric of ineffective assistance, but — Well, it's all under that, but it's not only under that, but the failing to investigate into matters pertaining to exculpatory witnesses, which I realize the allegation was pertaining to his trial, but then you read the attached exhibit, and it talks about the witnesses he should have called. But it doesn't tell the — Now we've added two more witnesses, and you're saying — and so it all has to do with exculpatory witnesses, and you're saying that can't relate back simply because of exculpatory witnesses? Correct. That's absolutely our — What case do you have? Well, I think the most recent case is the one from this Court, Schneider v. McDaniel, which says that — But Schneider really doesn't say anything about that. Schneider says failure to interview a particular witness is not the same as failure to investigate the defense of a different defendant. It says the failure to develop a voluntary intoxication is not the same as the failure to have them evaluated by a psychiatrist. And they also say you just can't say failure to have an issue on appeal and then talk about whether one should add an extra issue that didn't have anything about putting the appellate issues in or not. But this is different than that. These facts come, as my colleague has suggested, from the very same thing, failure to investigate matters as to exculpatory witnesses. But it's our contention that that's simply too broad to then, five years later, have a new attorney come in and say, oh, now it's not Roy Ramsey, the preliminary hearing testimony, which was clearly the focus of that original petition. There was the statement that said, failure to investigate matters pertaining to my trial, and then the memorandum was solely about the preliminary hearing testimony of Roy Ramsey. And that's the way we answered the petition originally. That's the way the district court understood that claim to be. Kagan. Kagan. But what about Exhibit J? Exhibit J gets more specific than that. I tend to agree with you that if the claim is failure to investigate generally, that's probably going to be viewed by the Supreme Court as a bit too broad for relation back, because it would then cover virtually the entirety of the pretrial period. But here we do have an exhibit, and the exhibit does talk about the investigation pertaining to particular witnesses. It just happened not to have mentioned the two witnesses in this particular case. And so if Exhibit J had said, you know, you failed, let's investigate various witnesses, including A, B, and C, but then omitted D and E, I suspect the Petitioner would have a stronger case. So does it turn on the failure to include certain words, like including? Well, no. I think it turns on the failure to include their names, their specific names. Because each of these witnesses saw something different. Well, what if Exhibit J said investigate and talk to witnesses A, B, or investigate witnesses including A, B, or such as A and B, and then C and D are omitted? Would that be different? I don't think so. I think it's our position that you have to name the specific witnesses. If you're now saying the whole reason that this murder conviction should be reversed is because they failed to investigate witnesses A and B, and those were not mentioned at all in the original petition, it's our position that that does not relate back to this general claim of failure to investigate other witnesses who had totally different perspectives on the trial. These two witnesses, one of them ended up being in the hospital and unavailable, and the other one couldn't be found. But they weren't even in this group of people like the two, Jackson and Alberti. They were in the scene generally, but they weren't really from the same perspective as these two witnesses. So I think it's fair to say, and especially under the male versus Felix standard, which all of the courts that have looked at that have interpreted it strictly, not liberally, because of the district court didn't interpret it that way, did they? All right. Do I owe any deference to the district court? No. It's reviewed de novo in committee. Why? Well, in Schneider v. McDaniel, this Court said that the case 517 Federal Reporter Williams v. Boeing Company. And in that, that's my precedent. And in the footnote, it says, Boeing contends that we sometimes apply the abuse of discretion standard to relation back issues. The cases inside, however, deal with the review of the district court's decision to grant or deny the amendment to a complaint rather than relation back. But if it were to happen at the same time, then I would give deference. Isn't that what happened in this case? This all comes from a traverse. We're talking about whether we're going to allow an amendment or not. And the district court said, hey, I think this is a pretty good amendment. This is not one we ought to toss out because there's absolutely no way it can make it. But we ought to allow it, and it will relate back. And so it's going to be allowed. I'm not familiar with that particular civil case that the Court cited. But in Schneider v. McDaniel, this Court did say in the context of relation back under ADPA that these matters are reviewed de novo, including whether a claim relates back. So that's the case that we're relying on. I guess what I struggle with, and my colleague has hit on this, is, isn't there an underlying factual determination by the district court that the identified witnesses were part and parcel of a larger group that included these two, if you will, new names? Isn't there some kind of factual determination there? No. I don't believe the Court made that kind of a factual determination. The district court simply said, this is the quote from its order, "...the ineffective assistance of counsel claim alleged in Rodriguez's amended petition is framed broadly enough that it could encompass counsel's fares and omissions with respect to all witnesses, not just Roy Ramsey." So that looks to me like a legal conclusion about the scope of relation back, not some sort of factual determination. The Court discussed some factual matters when it addressed the merits of that claim, but it didn't really address anything factual in whether or not it related back. You had been the prosecutor on a case like this, and your case investigator. And you asked your investigator to investigate three witnesses present at the scene of the crime, in which he discovered very quickly that there were actually five. Would you expect your investigator to look at number four and five? Well, I think the investigator might come back. Could you start with the yes or no? Not necessarily would be my answer. It would be okay if he came back and said, okay, I talked to the three. I think that's the way investigators typically work. They take their direction from the attorney. If the investigator said, I have now determined that there were additional witnesses that might be relevant, do you want me to go interview them, I think that's the way that it usually happens. Okay. Okay. Thank you for your argument. Your time has expired. I think you have a minute, Counselor. Thank you, Your Honor. I'd like to quickly go to the relation back issue. And to say that the relation back does not require that the exact same facts be alleged in the former petition and the later petition, because if they were, they would be exactly the same claim. What the standard requires is that the facts be of the same time and type. And that's what we have here. If you deem the relevant time period to be the investigation or whether you deem it to be the crime itself, the incident that led to the charge, that's the same time that's alleged in the prior petition and the later petition, as well as facts of the same type, because we're talking about a failure to interview the witnesses who were present on the scene. So the same time and type, it's a common core of operative facts. It doesn't make sense to say that the prior petition should have made the exact same allegations, because there would have been no need to file a subsequent petition. And as to whether or not the trial lawyer could have reasonably decided not to interview Alberti and Jackson, that just simply could not have possibly been a reasonable decision when they were so closely connected to the violence that was the basis for Mr. Rodriguez's defense. Thank you very much for your argument. Thank you, Your Honor. And those were very good arguments, and we appreciate both of them. Case 12-15485, Rodriguez v. Adams, is submitted.
judges: Hawkins, Smith, Nguyen